Plaintiff, while in the employ of the defendant as bartender, or manager of a saloon in Concordia Parish, paid with his own check an invoice covering the price of whiskey and beer sold and delivered to the defendant by a merchant in Monroe, Louisiana, amounting to $1,282.12. The saloon bears the euphonious name of "White Ripple". This suit was instituted to recover judgment for the amount of the check, after plaintiff ceased to work for defendant. He being a non-resident, jurisdiction was effected by levy of a writ of attachment.
Answering, the defendant denied liability for the amount for which he was sued, and reconvening, prayed that plaintiff be ordered to render an accounting for all property, money, etc., of the defendant that came into his possession for the period of his employment. To support the demand for an accounting, defendant alleged at length facts deemed by him sufficient to justify his position with respect thereto. Inter alia, he avers that in July, 1945, he employed the plaintiff to manage and operate his saloon and night club, then being conducted on and in property of defendant; that under the contract of employment plaintiff agreed to manage said business in a careful and efficient manner, collect revenues thereof, pay its expenses, remit to defendant the balance of income above expenses, and to render an accounting of his stewardship; that plaintiff acted in the capacity aforesaid until some time in January, 1946, at which time he left defendant's employ, but did not then nor has he sinc'e rendered an accounting as he was obligated to do; that said business, under plaintiff's management, earned substantial profits.
In conjunction with his answer and reconventional demand, defendant procured the issuance of a subpoena duces tecum commanding plaintiff to produce in court on a fixed date and hour, all books, records and accounts of or pertaining to the business and operation of the said saloon and night club, covering the period from July 1, 1945, to January 15, 1946, including invoices, statements of income and expenses, bank statements, etc. He affirmatively alleged that said records, papers, etc., will disclose that plaintiff is indebted unto defendant in a sum in excess of $2,000.00.
In the application for the writ, defendant alleged that he intended to also establish from the contents of said records, papers, etc., that plaintiff deposited to his own personal account in a named bank all the receipts of the business, and paid therefrom, with his own checks, its expenses; that in this manner plaintiff has been fully reimbursed the amount of the check on which he sued; that the total of receipts from the business deposited in said manner greatly exceeded the amount of said check. These allegations are not supported by the documents produced nor by any other evidence in the case.
Answering the reconventional demand, plaintiff generally denied the material allegations thereof and affirmatively averred that he was employed by defendant only as a sales clerk and was not invested with managerial or supervisory powers or duties. He denied that he was obligated to or was ever called upon by defendant to render the accounting by him sought; *Page 827 
that no books or records reflecting the financial condition of the business were kept by him or by anyone else, so far as his knowledge goes, nor was he expected or required to do so; that he is an "aged and uneducated man" and wholly incapable of keeping books or records of any sort or character; and that defendant all the while well knew this.
Defendant's demand for an accounting was rejected. There was judgment for plaintiff as by him prayed, and defendant appealed suspensively. The trial judge gave written raasons for his action.
There is sharp conflict, in material respects, between the testimony of the litigants as regards nearly every phase of the case and especially as regards plaintiff's duties and powers under the terms of his, employment. There are, however, many material facts that the testimony places beyond serious dispute.
When defendant acquired the saloon and night club property in July, 1945, he found plaintiff in charge of the saloon under employment of its former owner. He simply engaged plaintiff to continue running the saloon. He was not employed to and did not conduct the night club wherein there were several slot machines, operated in violation of the law, and dice games banked by defendant and another person jointly on a fifty-fifty basis. In addition, plaintiff was not charged with the duty of operating the saloon during the night time. Other employees took over as he retired from the place in the early hours of each evening. Naturally, the principal income of the saloon was between suns.
Plaintiff, while on duty, dispensed liquor over the counter, sold other merchandise, such as cigars, cigarettes, etc., placed orders for small amounts of needed merchandise and often from the receipts of the business, paid its bills, a record of which was roughly kept. Other employees likewise paid bills from cash on hand. Defendant, himself, invariably placed orders for larger quantities of merchandise and often paid for same with his own personal checks. He gave the order for the merchandise, the price of which was paid by the check, the basis of this suit. Besides plaintiff, other employees, as well as the defendant, knew the safe's combination and had free access thereto.
Plaintiff testified, and there is no substantial contradiction thereof, that when he checked out each evening he counted the cash and placed same in the safe, after it was put in the building, and prior thereto he counted and left the cash in the cash register. He had no further control over the cash until the following morning when he resumed his duties, if same was still there. He further testified that almost daily defendant would come to the saloon, open the safe and take therefrom the cash or part thereof, but defendant specifically denies this. It was defendant's safe and his business and there appears no reason whatever for him not having done as plaintiff says he did.
[1] In view of the foregoing resume of facts, it is obvious an accounting by the plaintiff, as demanded, is impossible. And this is true, whether plaintiff acted as manager of the saloon business, as contended by defendant, or simply as clerk and bar tender, as by him asserted. The court's ruling on this phase of the case was clearly correct.
It appears that the order for liquors involved herein, was an unusually large one. Evidently, this was because of the anticipation of a heavy Christmas season trade. The merchandise was delivered at defendant's saloon on or about November 27th, and was paid for by plaintiff's check on December 4th. It was the custom of the Monroe merchant who sold the liquor to have its salesman call at the saloon one week after the delivery of goods and make collection therefor. As a rule, a new order was then placed with the salesman. It so happened that the salesman in this instance called at the saloon about seven P.M. when plaintiff was preparing to go to his home for the night. He informed the salesman that he did not have sufficient cash to pay the bill and would have to give him his personal check for the larger part of it, as the defendant was not present. The salesman suggested that a check for the whole amount be drawn as he much preferred to have a check than the amount *Page 828 
in cash. He did not wish to carry the money on his person.
Plaintiff testified that on the day following issuance of the check he informed defendant what he had done and that defendant approved his action and stated that he would soon reimburse to plaintiff the amount of the check. Plaintiff also testified that on different occasions thereafter he mentioned the matter to defendant and requested reimbursement but that such was never done. Defendant denies positively that plaintiff said anything to him about paying for the liquors until several weeks after he had ceased to work for him.
Defendant, of course, knew that the liquors had been delivered but contends that as plaintiff had full charge of the business with the right to pay for merchandise delivered to it, he, naturally, took cash from receipts of the business sufficient to reimburse himself in whole or part the amount of the check. One would think that he would have done this.
[2] Plaintiff admits that the liquors were disposed of in due course of business while he worked at the saloon and, this being true, evidently enough cash was realized from their sale to extinguish said indebtedness. A rebuttal presumption arises, in view of the established facts and circumstances, that plaintiff would not have, during the nearly two months he was in defendant's employ after paying for the liquors, overlooked, reimbursing himself in whole or part the outlay he had made on behalf of his employer. C.J. 48, p. 689.
[3] Appellant alternatively argues that, at the most, defendant should not be cast for more than $600.00. This position is based upon the testimony of several witnesses, most of whom appear to be disinterested, to the effect that in conversation with the plaintiff prior to the time this suit was filed, he stated positively that defendant owed him only this amount. There can be little doubt that plaintiff made these statements and at a time when no good reason existed for him speaking other than the truth. A thorough consideration of all the facts and circumstances of this rather unique suit impels us to the conclusion that plaintiff should not recover beyond the $600.00 he many times declared as being the amount defendant owed him. This conclusion, of course, implies that the debt due plaintiff was reduced to this amount before he left defendant's employ.
[4] Appellant also contends that plaintiff should be charged with a dishonored check for $125.00 that he cashed from business funds. We do not think this position well taken. Plaintiff was not instructed not to cash checks of patrons. In due course of business he would do so frequently and evidently to the defendant's knowledge. It is well known that in this day and time business of every character is largely carried on by means of checks on banks; and the retailer who refuses to accept or cash checks of his customers is destined to lose valuable trade. And if the employer desires that this practice be not followed in his business, he should positively impart to his employees his position in this respect or else they cannot be held responsible for bad checks taken in the due and regular course of business.
For the reasons herein assigned, the judgment appealed from is amended by reducing the amount thereof to $600, and as thus amended, it is affirmed. Costs of appeal are assessed against the plaintiff and all other costs are assessed against the defendant.